MCKOOL SMITH HENNIGAN, P.C.
J. MICHAEL HENNIGAN (SBN 59491)
hennigan@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN, P.C.
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:  (213) 694-1200
Facsimile:  (213) 694-1234

ZWERLING, SCHACHTER & ZWERLING, LLP
ROBIN F. ZWERLING (*pro hac vice* to be filed)
rzwerling@zsz.com
JEFFREY C. ZWERLING (*pro hac vice* to be filed)
jzwerling@zsz.com
SUSAN SALVETTI (*pro hac vice* to be filed)
ssalvetti@zsz.com
ANDREW W. ROBERTSON (*pro hac vice* to be filed)
arobertson@zsz.com
ANA M. CABASSA-TORRES (*pro hac vice* to be filed)
acabassa@zsz.com
41 Madison Avenue
New York, NY 10010
Telephone:  (212) 223-3900
Facsimile:  (212) 371-5969

Attorneys for Plaintiff Thomas J. Kennis

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS J. KENNIS,<br><br>                    Plaintiff,<br><br>          v.<br><br>METROPOLITAN WEST ASSET MANAGEMENT, LLC<br><br>                    Defendant. | Case No. 2:15-cv-8162<br><br>**COMPLAINT FOR VIOLATION OF SECTION 36(b) OF THE INVESTMENT COMPANY ACT OF 1940, 15 U.S.C. §80a-35(b)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Thomas J. Kennis brings this action against Defendant Metropolitan West Asset Management, LLC ("Defendant" or "Met West").  These allegations are largely based upon an investigation conducted by and through Plaintiff's counsel, which included, *inter alia*, a review of documents filed with the Securities and Exchange Commission and other public information.

## OVERVIEW OF ACTION

1.      Plaintiff brings this action against Met West on behalf of and for the benefit of the Metropolitan West Total Return Bond Fund (the  "Met West Bond Fund" or "Fund") pursuant to Section 36(b) of the Investment Company Act of 1940 (the "1940 Act"), 15 U.S.C. § 80a-35(b).

2.      Defendant is the investment adviser to the Fund and receives an annual fee from the Fund for providing investment management services to the Fund.

3.      Under Section 36(b), Defendant owes a fiduciary duty to the Fund with respect to the investment advisory fees paid by the Fund.

4.      Defendant breached that fiduciary duty by receiving investment advisory fees from the Fund that are so disproportionately large that they bear no reasonable relationship to the value of the services provided by Defendant and could not have been the product of arm's-length bargaining.

5.      The investment advisory fee rate that Defendant charges the Fund is as much as 497% higher than the rates negotiated at arm's length by Defendant with other clients for the same or substantially the same investment advisory services.

6.      As a result of its higher fee rate, the Fund pays Defendant as much as $117.4 million more in fees each year than it would pay for Defendant's investment advisory services had the fee arrangement been negotiated at arm's length.

7.      The Fund's investment advisory fee arrangement has enabled Defendant to retain for itself the benefits of economies of scale resulting from increases in the

COMPLAINT FOR VIOLATION OF SECTION 36(b) OF THE INVESTMENT COMPANY ACT OF 1940,
15 U.S.C. §80a-35(b)T

1   Fund's assets under management during recent years, without appropriately sharing

2   those benefits with the Fund.

3        8.    The amount of investment advisory fees paid by the Fund has increased

4   by more than 952% in recent years, from approximately $13,339,000 in fiscal year

5   2008 to approximately $140,290,000 in the Fund's most recently reported fiscal year

6   ended March 31, 2015.

7        9.    The increase in the fees paid by the Fund was not accompanied by a

8   proportionate increase in the services provided by Defendant or the cost of providing

9   investment advisory services to the Fund.

10       10.    The increase in fees paid by the Fund resulted in increased profits for

11   Defendant at the expense of the Fund.

12       11.    Plaintiff brings this action to recover for the Fund the excessive and

13   unlawful investment advisory fees charged by Defendant in violation of Section 36(b),

14   as well as lost profits and other actual damages caused by the Fund's payment of those

15   fees.

16   **JURISDICTION AND VENUE**

17       12.    The claim asserted arises under Section 36(b) of the 1940 Act, 15 U.S.C.

18   § 80a-35(b).

19       13.    This Court has jurisdiction of the claim pursuant to Sections 36(b)(5) and

20   44 of the 1940 Act, 15 U.S.C. §§ 80a-35(b)(5), 80a-43, and 28 U.S.C. § 1331.

21       14.    Venue is proper in this judicial district pursuant to Section 44 of the 1940

22   Act, 15 U.S.C. § 80a-43, and 28 U.S.C. § 1391 because Defendant is organized under

23   California law, is an inhabitant of this district, maintains an office in this district,

24   transacts business in this district, and because certain of the acts and transactions

25   giving rise to Plaintiff's claim occurred in this district.

26

27

28

COMPLAINT FOR VIOLATION OF SECTION 36(b) OF THE INVESTMENT COMPANY ACT OF 1940,
15 U.S.C. §80a-35(b)T

**PARTIES**

15.     Plaintiff Thomas J. Kennis, a resident of the State of Michigan, is a shareholder in the Fund and has continuously owned shares in the Fund since at least February 2012.

16.     Defendant Met West is a limited liability company organized under California law.  Defendant is a subsidiary of TCW Group, Inc.

17.     Defendant's principal office and place of business is located within this judicial district at 865 S. Figueroa Street, Los Angeles, California.

**THE FUND'S ORGANIZATION AND OPERATIONS**

18.     The Fund is an open-end management investment company, also known as a "mutual fund," registered under the 1940 Act.

19.     The Fund is organized as part of a series within Metropolitan West Funds (the "Met West Funds"), which is a statutory trust formed under Delaware law on or about December 9, 1996.  The Met West Funds consists of nine mutual funds, including the Met West Bond Fund.

20.     Like other mutual funds, the Fund is a type of collective investment that pools money from investors and invests the money in a portfolio of securities.

21.     The Fund issues shares to investors, such as Plaintiff, who invest money in the Fund, and those investors become shareholders in the Fund.  Each share issued by the Fund represents, and may be redeemed for a *pro rata* interest in the Fund's underlying portfolio of securities (less any fees and other liabilities).

22.     Like most other mutual funds, the Fund does not have officers, employees or have facilities of its own.  The Fund's operations are conducted by external service providers pursuant to contracts with the Fund.

23.     Defendant serves as the Fund's investment adviser and, in that capacity, is responsible for managing the Fund's portfolio of securities, including researching

potential investments and deciding which securities will be purchased for or sold from the portfolio.

24.     Other service providers, including certain of Defendant's affiliates, provide other services to the Fund and its shareholders, such as communicating with shareholders about the Fund, maintaining records of each shareholder's ownership of Fund shares, and managing the process by which Fund shares are purchased by or redeemed from shareholders.

25.     The Fund is overseen by a Board of Trustees (the "Board") consisting of nine members.

26.     The same Board oversees eight other mutual funds managed by Defendant or its affiliates.

27.     The Board is responsible for selecting and monitoring the Fund's service providers, among other things.

**DEFENDANT'S INVESTMENT ADVISORY SERVICES TO THE FUND**

28.     Defendant serves as investment adviser to the Fund pursuant to an Investment Management Agreement (the "IMA") between Metropolitan West Funds and Met West, which was most recently amended on June 26, 2013.

29.     The IMA requires Defendant to provide investment advisory services to the Fund, including:  (a) supervising and managing the Fund's portfolio of investments; (b) providing advice and recommendations with respect to the investment of the Fund's assets; (c) placing orders for the purchase or sale of securities on behalf of the Fund; (d) reporting to the Board; and (e) overseeing the administration of the Fund's business and affairs.

30.     The IMA provides, in pertinent part:

> The Manager shall act as investment manager to the Funds
> and shall supervise investments of the Funds on behalf of
> the Funds in accordance with the investment objectives,

COMPLAINT FOR VIOLATION OF SECTION 36(b) OF THE INVESTMENT COMPANY ACT OF 1940, 15 U.S.C. §80a-35(b)T

programs and restrictions of the Funds….[T]he Manager shall: (i) furnish the Funds with advice and recommendations with respect to the investment of each Fund's assets and the purchase and sale of portfolio securities for the Funds…; (ii) furnish the Funds with reports, statements and other data on securities, economic conditions and other pertinent subjects which the Trust's Board of Trustees may reasonably request; (iii) manage the investments of the Funds, subject to the ultimate supervision and direction of the Trust's Board of Trustees; (iv) provide persons satisfactory to the Trust's Board of Trustees to act as officers and employees of the Trust and the Funds…; and (v) render to the Trust's Board of Trustees such periodic and special reports with respect to each Fund's investment activities as the Board may reasonably request…

The Manager shall place orders for the purchase and sale of securities either directly with the issuer or with a broker or dealer selected by the Manager…

The Manager shall oversee the administration of the Funds' business and affairs

31.    The Fund's prospectus, filed with the SEC annually, provides additional information about the investment advisory services provided by Defendant to the Fund, including the Fund's investment objective, the types of securities in which the Fund invests, and the strategies employed by Defendant in managing the Fund.

COMPLAINT FOR VIOLATION OF SECTION 36(b) OF THE INVESTMENT COMPANY ACT OF 1940,
15 U.S.C. §80a-35(b)T

32.     According to the Met West Bond Fund's most recent prospectus filed with the SEC on July 29, 2015, Defendant invests in the following types of securities and employs the following investments strategies in managing the Met West Bond Fund:  (a) the Fund will invest at least 80% of its portfolio in investment grade fixed income securities; (b) no more than 20% of the Fund's portfolio will be invested in securities rated below investment grade; (c) the Fund invests in the U.S. and foreign fixed income securities, including emerging markets; (d) the Fund principally invests in corporate bonds, U.S. and foreign government and agency securities, notes, collateralized bond obligations, mortgage-related and asset-backed securities, bank loans, swaps, futures, municipal securities, options, credit default swaps and private placements; (e) the Fund may invest in derivatives in an effort to hedge investments, for risk management, or to increase income or gains for the Fund; and (f) the portfolio duration is two to eight years and the dollar-weighted average maturity ranges from two to fifteen years.

33.     The team of Met West portfolio managers, analysts, research associates, and traders who are responsible for providing investment advisory services to the Met West Bond Fund is known as the Total Return Bond Fund Team.

34.     The Total Return Bond Fund Team is led by portfolio managers Tad Rivelle, Stephen Kane, Laird Landmann and Bryan Whalen.

35.     In providing investment advisory services to Met West Bond Fund, Defendant must comply with the 1940 Act and related rules and regulations issued by the SEC, as well as with various provisions of federal tax law.

36.     The Total Return Bond Fund Team is supported by a staff of legal, compliance, and administrative personnel, which is responsible for ensuring that Defendant's investment advisory services comply with applicable law, including the 1940 Act, and for maintaining books and records relating to Defendant's provision of investment advisory services to the Fund.

COMPLAINT FOR VIOLATION OF SECTION 36(b) OF THE INVESTMENT COMPANY ACT OF 1940,
15 U.S.C. §80a-35(b)T

1

2

**INVESTMENT ADVISORY FEES**

**CHARGED TO THE FUND BY DEFENDANT**

3        37.    In exchange for the investment advisory services provided by Defendant

4  to the Fund, the IMA requires the Fund to pay Defendant an annual fee that is

5  calculated as a percentage of the Fund's assets under management or "AUM."

6        38.    At all relevant times, the Fund's investment advisory fee rate has been 35

7  basis points or 0.35% of the Fund's AUM.

8        39.    The Fund paid Defendant $140,290,000 in investment advisory fees

9  during fiscal year 2015.

10

11

12

**DEFENDANT PROVIDES THE SAME OR SUBSTANTIALLY THE SAME**

**INVESTMENT ADVISORY SERVICES TO SUBADVISED**

**FUNDS FOR LOWER FEES**

13        40.    Met West provides investment advisory services to other clients.

14        41.    Those clients include the following mutual funds:  (a) the Columbia

15  Active Portfolios Multi-Manager Core Plus Bond Fund (the "Columbia Subadvised

16  Fund"), (b) the Consulting Group Capital Markets Core Fixed Income Investments

17  Fund (the "CGCM Subadvised Fund"), and (c) the AZL MetWest Total Return Bond

18  Fund (the "AZL Subadvised Fund").  These funds are collectively referred to herein as

19  the "Subadvised Funds."

20        42.    Each of the Subadvised Funds was organized and sponsored by a

21  financial institution independent of Met West.

22        43.    Like the Fund, each of the Subadvised Funds is an open-end management

23  investment company and is registered under the 1940 Act.

24        44.    Like the Fund, each of the Subadvised Funds is part of a business trust or

25  corporation organized under state law.

26        45.    Like the Fund, each of the Subadvised Funds issues shares to investors

27  who invest money in the fund, and each share represents, and may be redeemed for, a

28

COMPLAINT FOR VIOLATION OF SECTION 36(b) OF THE INVESTMENT COMPANY ACT OF 1940,

15 U.S.C. §80a-35(b)T

1  *pro rata* interest in the Subadvised Fund's underlying portfolio of securities (less any

2  fees and other liabilities).

3      46.    The Subadvised Funds' financial institution sponsors nominally serve as

4  the funds' investment advisers.  They have investment advisory contracts with the

5  funds, and receive investment advisory fees from the funds.

6      47.    Each of the financial institution sponsors has subcontracted with Met

7  West to provide investment advisory services to the Subadvised Funds.  Pursuant to

8  subadvisory agreements between Met West and each of the financial institution

9  sponsors, Met West acts as a so-called "subadviser" and provides investment advisory

10  services to each Subadvised Fund in exchange for a fee.

11      48.    The fees that Met West receives for providing investment advisory

12  services to the Subadvised Funds are paid by the financial institution sponsors of those

13  funds.

14      49.    The investment advisory services that Met West provides as subadviser

15  to the Subadvised Funds are the same or substantially the same as the services Met

16  West provides to the Fund pursuant to the IMA.

17      50.    The subadvisory agreements require Met West to provide the same or

18  substantially the same investment advisory services as are required by the Fund's

19  IMA.  For example, like the Fund's IMA, the subadvisory agreement for the AZL

20  Subadvised Fund requires Met West to:  (a) "manage the investment operations and

21  the composition" of the assets of the AZL Subadvised Funds; (b) "determine…what

22  investment and securities will be purchased, retained, or sold" by the AZL Subadvised

23  Fund; (c) place orders for the purchase and sale of securities on behalf of the AZL

24  Subadvised Fund; and (d) "render to the Board such periodic and special reports as the

25  Board or Manager may request."

26      51.    Met West employs the same or substantially the same investment

27  strategies and invests in the same types of securities on behalf of the Subadvised

28

Funds as it does on behalf of the Fund.  For example, the following chart compares the Fund's Prospectus to the prospectus of the AZL Subadvised Fund filed on April 23, 2015 and shows that they are substantively identical:

|  | **Met West Bond Fund** | **AZL Subadvised Fund** |
|---|---|---|
| Objective | Seeks to maximize long-term total return | Seeks to maximize long-term total return |
| Types of Securities | at least 80% in investment grade fixed income securities | at least 80% in investment grade fixed income securities |
|  | no more than 20% in securities rated below investment grade | no more than 20% in securities rated below investment grade |
|  | may invest in foreign fixed income securities, including emerging markets | may invest in foreign fixed income securities, including emerging markets |
|  | may invest in derivatives in an effort to hedge investments, for risk management, or to increase income or gains for the Fund | may invest in derivatives in an effort to produce incremental earnings, to hedge existing positions, and for risk management |
|  | the portfolio duration is two to eight years and the dollar-weighted average maturity | portfolio duration is two to eight years and the dollar-weighted average maturity |

COMPLAINT FOR VIOLATION OF SECTION 36(b) OF THE INVESTMENT COMPANY ACT OF 1940, 15 U.S.C. §80a-35(b)T

|  | Met West Bond Fund | AZL Subadvised Fund |
|---|---|---|
| Objective | Seeks to maximize long-term total return | Seeks to maximize long-term total return |
|  | ranges from two to fifteen years<br><br>principally corporate bonds, US and foreign government obligations, collateralized bond obligations, collateralized debt obligations, mortgage-related and asset-backed securities, bank loans, money-market securities, bank loans and other obligations | ranges from two to fifteen years<br><br>principally corporate bonds, US and foreign government obligations, collateralized bond obligations, collateralized debt obligations, mortgage-related and asset-backed securities, bank loans, money-market securities, bank loans and other obligations |
| Objective | Seeks to maximize long-term total return | Seeks to maximize long-term total return |
| Investment Strategies | Identify securities that are undervalued | Identify securities that are relatively undervalued |

52.    The Total Return Bond Fund Team, led by portfolio managers Tad Rivelle, Stephen Kane, Laird Landmann and Bryan Whalen, manages each Subadvised Funds' investment portfolio.

53.    The Total Return Bond Fund Team uses the same or substantially the same investment strategies, research and analysis, and systems, technology, and other

resources in providing investment advisory services to the Subadvised Funds as it uses in providing investment advisory services to Met West Bond Fund.

54. In providing investment advisory services to the Subadvised Funds, Met West must comply with the same or substantially the same provisions of the 1940 Act, SEC regulations, and federal tax law as when it provides investment advisory services to the Met West Bond Fund.

55. The same or substantially the same legal, compliance, and administrative personnel are responsible for ensuring that Met West's investment advisory services comply with applicable law and for maintaining books and records relating to Met West's provision of investment advisory services to the Subadvised Funds. They use the same or substantially the same systems, technology, and other resources in performing those tasks for the Subadvised Funds as they use for the Met West Bond Fund.

56. The fees that Defendant receives for providing investment advisory services to the Subadvised Funds are lower than the fees paid by the Fund to Defendant for the same or substantially the same services.

57. As shown in the following chart, Met West's investment advisory fee rate of 35 basis points on all AUM is 75% to 497% higher than the fee rates paid by or on behalf of the Subadvised Funds.

| Fund | Fee Rate | Difference (%) |
|------|----------|----------------|
| Met West Bond Fund | 0.35% on all AUM | |
| Columbia Subadvised Fund | 0.18% on AUM up to $500 million & declining to 0.05% as assets increase | 94% - 497% |
| CGCM Subadvised Fund | 0.20% on all AUM | 75% |

COMPLAINT FOR VIOLATION OF SECTION 36(b) OF THE INVESTMENT COMPANY ACT OF 1940, 15 U.S.C. §80a-35(b)T

| AZL Subadvised Fund | 0.18% on AUM up to $500 million; and<br><br>0.10% on AUM over $500 million | 94% - 250% |

58.     If the Fund's investment advisory fees were calculated using the fee rates for the Subadvised Funds, the Fund would pay up to $117.4 million less in fees annually at AUM during fiscal year 2015 (approximately $40 billion in AUM approximately), as shown in the following chart.

| Fee Schedule | Fees Paid (at $40B in AUM) | Difference ($) |
|---|---|---|
| Met West Bond Fund | $140,000,000 | |
| Columbia Subadvised Fund | $22,600,000 | $117,400,000 |
| CGCM Subadvised Fund | $80,000,000 | $60,000,000 |
| AZL Subadvised Fund | $40,400,000 | $99,600,000 |

59.     The higher fees paid by the Fund to Defendant pursuant to the IMA as set forth in the preceding paragraphs are not justified by any additional services provided to the Fund by Defendant or its affiliates.

60.     Insofar as Defendant or its affiliates provide services to the Fund other than the investment advisory services discussed above, those services are provided pursuant to separate contracts for separate compensation, in addition to the fees paid to Defendant under the IMA.

## DEFENDANT HAS NOT ADEQUATELY SHARED
## THE BENEFITS OF ECONOMIES OF SCALE WITH THE FUND

61.     The Met West Bond Fund's AUM have increased during the past several years, with AUM growing from approximately $5.8 billion as of March 31, 2008 to

12

approximately $64.3 billion as of the end of the Fund's most recently reported fiscal year on March 31, 2015. As of August 30, 2015, the Met West Bond Fund's AUM were approximately $67.3 billion.

62.     As a result of the increase in AUM, the amount of investment advisory fees charged to and paid by the Met West Bond Fund increased by more than 952% from approximately $13,339,000 in fiscal year 2008 to approximately $140,339,000 in fiscal year 2015.

63.     The increase in investment advisory fees paid to Defendant was not accompanied by a proportionate increase in the work or cost required by Defendant to provide investment advisory services to the Fund.

64.     Defendant realized economies of scale as the Fund's AUM increased, which reduced the cost, as a percentage of the Fund's AUM, of providing investment advisory services to the Fund, and increased the profitability to Defendant from providing those services.

65.     Because investment advisers realize economies of scale as a mutual fund's AUM increase, the investment advisory fee rate charged to a mutual fund often decreases as the fund's AUM increases.

66.     For example, the fee paid to Defendants for providing investment advisory services to the AZL Subadvised Fund begins at 18 basis point (or 0.18%) on the first $500 million and 10 basis points (or 0.10%) on AUM greater than $500M.

67.     Breakpoints enable a fund to share in the benefits of economies of scale by reducing the fee rate it pays as AUM increase.

68.     Absent breakpoints or if the breakpoints do not appropriately reduce the effective fee rate paid by a fund, the benefits of economies of scales accrue to a fund's investment adviser in the form of higher fees and profits.

69.     The investment advisory fee schedule for the Met West Bond Fund does not include any breakpoints (*see* ¶ 38), and the investment advisory fee rate paid by

1   the Met West Bond Fund remains the same (0.35% of AUM) regardless of the amount
2   of the Fund's AUM.

3          70.    The investment advisory fee rates charged to and paid by the Fund have
4   not allowed the Fund to appropriately benefit from economies of scale as the Fund's
5   AUM has increased in recent years.

6                  **THE FEES DEFENDANT CHARGES TO THE FUND**
7                  **ARE NOT NEGOTIATED AT ARM'S LENGTH**

8          71.    The investment advisory fees paid by the Fund under the IMA are
9   determined by Defendant.

10         72.    The Board is required to approve the IMA and the fees paid by the Fund
11  to Defendant under the IMA on an annual basis.

12         73.    The Board has approved the IMA each year without devoting the time
13  and attention necessary to independently assess the investment advisory fees paid by
14  the Fund or to effectively represent the interests of the Fund shareholders *vis-à-vis*
15  Defendant.

16         74.    Serving on the Board is a part-time job for the Board members, most of
17  whom are employed full-time in senior-level positions in management, finance, or
18  academia, and/or serve on the boards of directors of other public and privately-held
19  companies and institutions.

20         75.    The Board conducts its responsibilities not only for the Fund, but also for
21  the 8 other funds in the Met West Funds.  This includes approving investment
22  advisory and other service contracts for each of those funds, as well as other
23  responsibilities.

24         76.    In approving the IMA for the Fund, the Board relied on information and
25  analyses that were prepared by Defendant or were designed to support Defendant's
26  rationalization for the investment advisory fees charged to the Fund.

27

28

77.     The Board has not considered information or analyses reflecting the interests of the Fund or its shareholders with respect to the investment advisory fees or critically assessing Defendant's rationalization for those fees.

78.     For example, with respect to the fees paid by other clients, the Board has accepted Defendant's representations that the lower fees paid by other clients reflect differences in the services provided to those clients.  The Board has not appropriately examined whether the investment advisory services provided to those clients by Defendant is different from the services provided to the Funds under the IMA or the extent of any such differences.  Nor has the Board considered appropriate information about the cost to Defendant of providing any additional services required by the IMA to assess whether the difference in fees is warranted by any such differences in the services provided.

79.     The Board has approved the IMA on the terms proposed by Defendant without negotiating more favorable terms of alternative arrangements that would benefit the Fund or its shareholders.

80.     The Board has not solicited proposals from other advisers to provide investment advisory services to the Fund.

81.     The Board has not negotiated a "most favored nation" provision into the IMA, which would require that the fee rates paid by the Fund be at least as favorable as the lowest rate other clients pay Met West for the same or substantially the same investment advisory services.

82.     The Board has approved the payment by the Fund of investment advisory fees that are higher than the fees other clients pay Met West for the same or substantially the same investment advisory services.

83.     The Board has approved investment advisory fee arrangements that enable Met West to retain for itself the vast majority of the benefits of economies of

1  scale resulting from increase in the Fund's AUM without appropriately sharing those
2  benefits with the Fund.

3       84.    In contrast, Met West's fees for providing investment advisory services
4  to the Subadvised Funds are determined by negotiations between two sophisticated
5  financial institutions:  Met West on the one hand and the sponsor of each of the
6  Subadvised Funds on the other.

7       85.    The Subadvised Funds' sponsors negotiate at arm's length with Met West
8  regarding the fees paid to Met West for providing investment advisory services to the
9  Subadvised Funds.

10      86.    The Subadvised Funds' sponsors retain as profit any portion of the
11 investment advisory fees received from those funds that remains after the sponsors
12 pay Met West's subadvisory fees.  By negotiating lower fees with Met West, the
13 Subadvised Funds' sponsors increase the amount of their retained profits.

14      87.    The Subadvised Funds' sponsors select investment advisers through a
15 competitive selection process, with multiple candidates submitting proposals.

16      88.    The Subadvised Funds' sponsors negotiate with investment advisers
17 regarding the fees to be charged at the outset of the relationship and when contracts
18 are subject to renewal.  The negotiations include exchanges of proposals and
19 counterproposals, resulting in reductions in the fee rates paid by the Subadvised
20 Funds.

21 **THE EXCESSIVE INVESTMENT ADVISORY FEES HARM THE FUND**

22      89.    The investment advisory fees are paid out of the Fund's assets.  Each
23 dollar in fees paid by the Fund to Defendant directly reduces the value of the Fund's
24 investment portfolio.

25      90.    The payment of excessive investment advisory fees to Defendant has
26 harmed the Fund and harms the Fund on a going-forward basis because the Fund loses

27

28

COMPLAINT FOR VIOLATION OF SECTION 36(b) OF THE INVESTMENT COMPANY ACT OF 1940,
15 U.S.C. §80a-35(b)T

investment returns and profits it could earn on the amounts paid out as fees if those amounts remained in the Fund's portfolio and available for investment.

91.     The Fund has sustained millions of dollars in damages due to the excessive investment advisory fees charged by Defendant.

**COUNT I**

**AGAINST DEFENDANT FOR VIOLATION OF SECTION 36(B)**

92.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

93.     Plaintiff asserts this Count on behalf of and for the benefit of the Fund.

94.     Defendant is the investment adviser to the Fund.

95.     Under Section 36(b), Defendant owes a fiduciary duty to the Fund with respect to its receipt of investment advisory fees and other compensation from the Fund.

96.     Defendant breached its fiduciary duty under Section 36(b) by charging investment advisory fees to the Fund that are so disproportionately large that they bear no reasonable relationship to the services provided by Defendant and could not have been the product of arm's-length bargaining.

97.     As a direct, proximate, and foreseeable result of Defendant's breach of its fiduciary duty under Section 36(b), the Fund has sustained millions of dollars in damages.

98.     Pursuant to Section 36(b)(3), Plaintiff seeks to recover, on behalf of and for the benefit of the Fund, the actual damages resulting from Defendant's breach of its fiduciary duty, including the excessive investment advisory fees paid by the Fund to Defendant and the investment returns that would have accrued to the Fund had those fees remained in the portfolio and available for investment.

99.   Alternatively, under Section 47 of the 1940 Act, 15 U.S.C. § 80a-46, Plaintiff seeks rescission of the IMA and restitution of all excessive investment advisory fees paid by the Fund pursuant to the IMA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment on behalf of and for the benefit of the Fund as follows:

A.   declaring that Defendant has violated Section 36(b), 15 U.S.C. § 80a-35(b), through the receipt of excessive investment advisory fees from the Fund;

B.   permanently enjoining Defendant from further violations of Section 36(b);

C.   awarding compensatory damages against Defendant, including repayment to the Fund of all excessive and unlawful investment advisory fees paid to Defendant by the Fund from one year prior to the commencement of this action through the date of trial, lost investment returns on those amounts, and interest thereon;

D.   rescinding the IMA between Defendant and the Fund pursuant to Section 47 of the 1940 Act, 15 U.S.C. § 80a-46, including restitution to the Fund of the excessive investment advisory fees paid to Defendant by the Fund from one year prior to the commencement of this action through the date of trial, lost investment returns on those amounts, and interest thereon;

E.   awarding Plaintiff the reasonable costs of this action, including attorneys' fees, expert witness fees, and such other items as may be allowed to the maximum extent permitted by law; and

F.   such other and further relief as the Court may deem just and proper.

COMPLAINT FOR VIOLATION OF SECTION 36(b) OF THE INVESTMENT COMPANY ACT OF 1940,
15 U.S.C. §80a-35(b)T

1

**JURY TRIAL DEMANDED**

2          Plaintiff demands a trial by jury.

3

4   DATED: October 16, 2015          Respectfully submitted,

5

6                                    MCKOOL SMITH HENNIGAN, P.C.

7

8

9                                    By /s/ J. Michael Hennigan _____

10                                         J. Michael Hennigan

11

12                                    ZWERLING, SCHACHTER &

13                                    ZWERLING, LLP

14

15

16                                    By/s/ Robin F. Zwerling _____

17                                         Robin F. Zwerling

18                                    Attorneys for Plaintiff Thomas J. Kennis

19

20

21          McKool 1128836v1

22

23

24

25

26

27

28

19

COMPLAINT FOR VIOLATION OF SECTION 36(b) OF THE INVESTMENT COMPANY ACT OF 1940, 15 U.S.C. §80a-35(b)T