UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 15-8162-GW(FFMx) | Date | June 16, 2016 |
| Title | *Thomas J. Kennis v. Metropolitan West Asset Management, LLC* | | |

| | |
|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |

| Javier Gonzalez | Anne Kielwasser | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Andrew Walker Robertson | Glenn K. Vanzura |
| Jeffrey C. Zwerling | John D. Donovan, Jr. |

**PROCEEDINGS:** **DEFENDANT METROPOLITAN WEST ASSET MANAGEMENT LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [37]**

Court hears argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Defendant's Motion is DENIED; Defendant's will have two weeks from the date of this order to answer the Complaint.

The Court sets a scheduling conference for July 21, 2016 at 8:30 a.m.

: 07

Initials of Preparer   JG

<u>**Kennis v. Metro. West Asset Mgmt., LLC**</u>, Case No. CV-15-8162-GW (FFM)
Tentative Ruling Following Supplemental Briefing on Defendant's Motion to Dismiss

Thomas Kennis ("Plaintiff") sues Metropolitan West Asset Management, LLC ("Defendant") for violation of Section 36(b) of the Investment Company Act of 1940 (the "ICA"), 15 U.S.C. § 80a-35(b).  *See* Compl. ¶¶ 92-98, Docket No. 1.  Plaintiff brings this action on behalf of the Metropolitan West Total Return Bond Fund (the "Fund").  *Id.* ¶ 1.

On April 25, 2016, the Court issued a Tentative Ruling denying Defendant's Motion to Dismiss for Failure to State a Claim.  *See* Tentative Ruling, Docket No. 52.  The Tentative Ruling held that Plaintiff had adequately stated a claim for a violation of Section 36(b) by sufficiently alleging three of the five *Gartenberg*[1] factors: (1) comparative fees; (2) economies of scale; and (3) the independence and conscientiousness of the Board.  *Id.* at 5-6.  At the hearing on the Motion, Defendant disputed whether Plaintiff had adequately alleged the comparative fees factor, and the Court allowed Defendant to submit supplemental briefing regarding this issue.

Now pending before the Court is Defendant's Supplemental Memorandum in Support of Its Motion to Dismiss.  *See* Def.'s Supp. Mem., Docket No. 54.  Plaintiff has filed a Supplemental Memorandum in Opposition to Defendant's Memorandum.  *See* Pl.'s Supp. Mem., Docket No. 56.

In its Supplemental Memorandum, Defendant contends that the Complaint's allegation that Defendant performs substantially the same services for the Fund as it does for three Sub-Advised Funds, yet charges the fund as much as 497% more than it charges the Sub-Advised Funds, is not supported by the information disclosed in the prospectuses for the Fund and Sub-Advised Funds.  *See* Def.'s Supp. Mem. at 1:5-14, Docket No. 54.  Rather, Defendant asserts that the prospectuses explicitly disclose different fees than the Complaint articulates.  *Id.*

Specifically, Defendant contends that the prospectuses disclose that the Fund's investment management fee of 0.35% is less than the primary investment management fee paid by each of the Sub-Advised Funds.  *Id.* at 4:13-19.  Defendant argues that instead of using the primary management fees paid by the Fund and Sub-Advised Funds as a comparison, Plaintiff "*subtracted* from the [m]anagement fee disclosed in those prospectuses the amount *retained* by [the Sub-Advised Funds] *after* payment of a portion of the aggregate to [Plaintiff]."  *Id.* at 6:15-

---

[1] *See Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923 (2d Cir. 1982).

1

7:2 (emphasis in original). Defendant provides the following table indicating the breakpoints in the Sub-Advisory fee schedules:

| Fund | **Sub-Advisory Fee to MetWest** | **Advisory Fee to MetWest** | **Advisory Fee to Primary Adviser** | **Total** |
|---|---|---|---|---|
| AZL Fund | 0.10% - 0.18% | - | 0.37% - 0.45% | 0.55% |
| CGCM Fund | 0.20% | - | 0.20% | 0.40% |
| Columbia Fund | 0.05% - 0.18% | - | 0.23% - 0.36% | 0.41% |
| **MetWest Fund** | **-** | **0.35%** | **-** | **0.35%** |

*Id.* at 7:12-17. Based on these breakpoints, Defendant asserts that Plaintiff incorrectly compared the Fund's entire management fee to a portion of the Sub-Advised Funds' management fees. *Id.* at 7:22-8:3.

In response, Plaintiff points out that the Supreme Court in *Jones v. Harris Assocs. L.P.*, 559 U.S. 335 (2010), cautioned against comparison to other mutual funds' advisory fees because such fees may not be negotiated at arm's-length. *See* Pl.'s Supp. Mem. at 10:25-11:9, Docket No. 56. Plaintiff argues that there is no basis to infer that the primary investment management fees charged to the Sub-Advised Funds, in addition to Defendant's fees, represent fair and reasonable compensation, as there is no indication they were negotiated at arm's-length. *Id.* at 11:10-12. And even assuming that the primary investment managers provide additional services to the Sub-Advised Funds that Defendant does not, Plaintiff argues that there is no basis to infer that Defendant provides comparable additional services to the Fund, justifying the advisory fee charged to the Fund. *Id.* at 12:21-13:12.

Defendant argues that the Fund does perform significant additional services for the Fund than it does for the Sub-Advised Funds, and therefore the fee Defendant charges the Sub-Advised Funds is inapt. *See* Def.'s Supp. Mem. at 8:7-12, Docket No. 54. Defendant contends that in *Jones*, the Supreme Court "expressly cautioned courts to be 'wary of inapt comparisons,' especially when 'there may be significant differences between the services rendered' to the different types of clients."[2] *Id.* at 13:5-12. Defendant provides a list of non-portfolio services

---

[2] The Court notes that in *Jones*, the Supreme Court did not hold that any particular benchmark for the comparative fees factor was superior to another. Rather, the *Jones* Court emphasized that there is no "categorical rule regarding the comparisons of the fees charged different types of clients . . . . Instead, courts may give such comparisons the weight that they merit in light of similarities and differences between the services and the clients in question require, but courts must be wary of inapt comparisons." *Jones*, 559 U.S. at 349-50. The Court cautioned courts to be wary not only of comparisons between an investment advisory fee charged to a mutual fund and those charged to

that Defendant allegedly performs for the Fund that it does not provide for the Sub-Advised Funds, which it claims demonstrates that the comparison is inapt. *Id.* at 8:13-9:24.

Plaintiff contends that Defendant's argument is "belied by the Fund's Investment Management Agreement with Defendant and other service contracts, which demonstrate that Defendant does *not* perform the purported 'additional responsibilities' . . . . Rather, those services are provided by different entities (not Defendant) and in exchange for different fees (not the advisory fees at issue)." Pl.'s Supp. Mem. at 6:18-24, Docket No. 56. As an example, Plaintiff asserts that many of the "additional" services are actually provided by BNY Mellon Investment Servicing pursuant to a Fund Administration and Accounting Agreement. *Id.* at 7:1-5; *see also* Decl. of Andrew Robertson ("Robertson Decl.") Ex. D, Docket No. 56-2 at pages 20-58. Further, Plaintiff points out that insofar as Defendant has a role in providing administrative services to the Fund, it receives additional payments from the Fund in excess of its advisory fee, pursuant to a Supplemental Administration Agreement. *See* Pl.'s Supp. Mem. at 7:23-27, Docket No. 56; *see also* Robertson Decl. Ex. E, Docket No. 56-2 at pages 59-68. Plaintiff thus argues that the Fund pays additional and separate fees for a majority of the purported additional responsibilities that Defendant claims justify the larger advisory fee charged to the Fund. *Id.* at 8:13-19.

As discussed in the Court's Tentative Ruling, whether or not the services provided by Plaintiff to the Fund and the Sub-Advised Funds are substantially the same, and whether or not a comparison to other mutual fees' advisory fees is more appropriate, are both fact-intensive inquiries that cannot be resolved at this stage in the litigation.[3] *See* Tentative Ruling at 6-7; *see*

---

independent funds by the same adviser, but also to be wary of "fees charged to mutual funds by other advisers," as those "comparisons are problematic because [those] fees, like those challenged, may not be the product of negotiations conducted at arm's length." *Id.* at 350-51.

[3] Defendant contends that in the wake of *Jones*, "ever *circuit* court after *Jones* has refused to permit plaintiffs to proceed toward trial in the absence of carefully laid factual foundations that establish *both* an *apt* comparison to services provided other clients for a disparate fee *and* other evidence the challenged fee was beyond the arm's length range." *Id.* at 15:16-16:5 (emphasis in original). However, with the exception of *Turner ex rel. Davis New York Venture Fund v. Davis Selected Advisers, LP*, 626 F.App'x 713, 716 (9th Cir. 2015), every case cited by Defendant involved a motion for summary judgment. Moreover, as explained in the Court's Tentative Ruling, in *Turner*, the Ninth Circuit granted the plaintiff's motion to dismiss because, although the plaintiff had compared the at-issue mutual fund's advisory fees to other mutual funds in the industry, the complaint "fail[ed] to allege that these other funds' advisers provided the same services or pursued a similar investment strategy." *Turner*, 626 F.App'x at 717. In contrast, here, Plaintiff has sufficiently alleged that the services provided by Plaintiff to the Fund and Sub-Advised Funds are similar and that similar investment strategies are pursued.

*also In re Davis New York Venture Fund Fee Litig.*, No. 14 CV 4318-LTS-HBP, 2015 WL 7301077, at *5 (S.D.N.Y. Nov. 18, 2015) ("Although Defendants may ultimately be able to demonstrate that Plaintiffs' sub-advisory fee benchmark is inapt, the issue is not ripe for resolution on the pleadings."); *In re Blackrock Mut. Funds Advisory Fee Litig.*, No. 14-1165 (FLW)(DEA), 2015 WL 1418848, at *5 (D. N.J. Mar. 27, 2015) (holding that plaintiff's fee comparison to sub-advised funds was sufficient at motion to dismiss stage where plaintiff alleged that the same advisory services were provided to each fund, and explaining that the "ultimate weight" of the comparison's relevancy was not appropriate for the court to resolve on a motion to dismiss).

Indeed, numerous district courts have addressed similar arguments at the motion to dismiss stage and found the complaint sufficient to state a claim. *See, e.g.*, *In re Davis*, 2015 WL 7301077; *In re Blackrock*, 2015 WL 1418848; *The Lynn M. Kennis Trust v. First Eagle Inv. Mgmt.*, *LLC*, No. CV 14-585-SLR/SRF, 2015 WL 8489956 (D. Del. Dec. 9, 2015); *Kenny v. Pac. Inv. Mgmt. Co. LLC*, No. C14-1987RSM, 2015 WL 10635505 (W.D. Wash. Aug. 26, 2015). Although Defendant attempts to distinguish these cases by arguing that the courts in those cases "did not look behind [the comparisons] and examine the prospectuses," Plaintiff correctly points out that in each of those cases, the plaintiff relied on prospectuses and other SEC filings similar to those at issue here.[4] *See* Pl.'s Supp. Mem. at 4:1-12 (citing *In re Davis*, 2015 WL 7301077, at *5; *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, No. 2:14-cv-414, 2015 WL 965665, at *5 (S.D. Ohio Mar. 4, 2015).

Because Plaintiff has sufficiently alleged a violation of Section 36(b) of the ICA, the Court would DENY Defendant's Motion to Dismiss.

---

[4] Defendant also emphasizes that as "[a]s a matter of law, SEC regulations require mutual fund fees to be disclosed in a way that permits 'comparison shopping' by investors." *See, e.g.*, *id.* at 1:25-26. To the extent Defendant is arguing that a benchmark comparison to other mutual funds must be used because of SEC regulations, the Court agrees with Plaintiff that this argument is meritless. *See* Pl.'s Supp. Mem. at 14:9-14, Docket No. 56. Indeed, Plaintiff's claim is brought pursuant to Section 36(b) of the ICA, not based on any disclosure or non-disclosure of the Fund's fee structure or compliance with SEC disclosure requirements.