UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 15-8162-GW(FFMx) | Date | September 8, 2016 |
| Title | *Thomas J. Kennis v. Metropolitan West Asset Management, LLC* | | |

| | |
|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Andrew Walker Robertson | Glenn K. Vanzura |
| J. Michael Hennigan | Robert A. Skinner |
| Robert W. Mockler | |

**PROCEEDINGS:** PLAINTIFF THOMAS J. KENNIS' MOTION RE SCOPE OF PHASE 1 DISCOVERY [68]

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Plaintiff's Motion is GRANTED IN PART and DENIED IN PART. The Court would limit Phase 1 discovery to information related to the services Defendants provides the Fund and the Sub-Advised Funds. The Court would not limit discovery to the three Sub-Advised Funds identified in the Complaint.

| | : | 18 |
|---|---|---|
| | Initials of Preparer | JG |

<u>*Kennis v. Metro. W. Asset Mgmt., LLC*</u>, Case No. CV-15-8162-GW (FFM)
Tentative Ruling on Motion re Scope of Phase 1 Discovery


I. <u>Background</u>

Thomas Kennis ("Plaintiff") sues Metropolitan West Asset Management, LLC ("Defendant") for violation of Section 36(b) of the Investment Company Act of 1940 (the "ICA"), 15 U.S.C. § 80a-35(b). *See* Compl. ¶¶ 92-98, Docket No. 1. Plaintiff brings this action on behalf of the Metropolitan West Total Return Bond Fund (the "Fund"). *Id.* ¶ 1. The action arises from allegations that Defendant breached its fiduciary duties to the Fund by charging the Fund investment advisory fees that are so disproportionately large they bear no reasonable relationship to the value of the services provided by Defendant. *Id.* ¶ 4.

On December 18, 2015, Defendant filed a Motion to Dismiss, arguing that the Complaint failed to state a claim for relief because it uses an "inapt comparison" between the fee Defendant charges the Fund and the fees charged to certain Sub-Advised Funds for which Defendant also provides advisory services. *See* MTD at 18:12-13, Docket No. 37. According to Defendant, this comparison is inapt because Defendant performs only a fraction of the services for the Sub-Advised Funds as it does for the Fund, and does not bear the same responsibilities and liabilities as it does when acting as a primary advisor for the Fund. *Id.* at 22:7-23:2. Defendant asserts that a more appropriate comparison is between the fee charged to the Fund and the fee charged to other competitive mutual funds in the industry. *Id.* at 18:7-20:20.

At the April 25, 2016 hearing on the Motion to Dismiss, the Court issued a Tentative Ruling denying the motion but, after considering the arguments of counsel, ordered supplemental briefing. *See* Docket No. 52. After receiving that briefing, the Court denied the Motion, reasoning that "whether or not the services provided by Plaintiff to the Fund and the Sub-Advised Funds are substantially the same, and whether or not a comparison to other mutual fees' advisory fees is more appropriate, are both fact-intensive inquiries that cannot be resolved at this stage in the litigation." *See* Ruling following Supplemental Briefing at 3, Docket No. 58 at page 4. However, the Court agreed to phase discovery, with the first phase focused on whether the services provided to the Fund and Sub-Advised Funds are substantially similar, because that issue could be dispositive if the services were, as Defendant contended in its Motion to Dismiss, not similar enough to be probative. *See* Reporter's Transcript of 7/16/16 Hearing, Docket No. 59

1

at pages 5-7 of 12.

At the subsequent scheduling conference on July 21, 2016, the Court set the date for the close of Phase 1 discovery for November 4, 2016. *See* Docket No. 65. The Court declined to make any decision regarding the scope of Phase 1 discovery at the scheduling conference, but indicated that the parties could file a motion with the Court if they could not agree on the scope.

Now pending before the Court is Plaintiff's Motion re Scope of Phase 1 Discovery. *See* Motion re Discovery ("Mot."), Docket No. 68. Defendant has opposed the Motion, *see* Opp'n to Mot. ("Opp'n"), Docket No. 71, to which Plaintiff has replied, *see* Reply, Docket No. 73.

## II. Analysis

In addition to discovery related to the services provided to the Fund and Sub-Advised Funds, Plaintiff seeks discovery related to the costs and profitability of the services Defendant provides. *See* Mot. at 3:27-6:11. Plaintiff contends that "[w]hile Plaintiff alleges that the services provided are the same or substantially the same, Plaintiff has also alleged that, to whatever extent they are different, any additional services provided to the Fund do not justify the more than $117 million in additional fees charged to the Fund every year." *Id.* at 4:5-8. Plaintiff asserts that the profit reports it seeks could show that Defendant incurs comparable costs in providing services to the Fund and to the Sub-Advised Funds, which would indicate that the services themselves are comparable. *Id.* at 5:6-9. Alternatively, Plaintiff contends that the profit reports could show that Defendant incurs only minimal costs in connection with those services it provides to the Fund that it does not provide to the Sub-Advised Funds, which would be evidence that the additional amount charged to the Fund is not justified by the different services. *Id.* at 5:9-13.

Defendant, on the other hand, argues that the purpose of Phase 1 Discovery should be to resolve the threshold inquiry of whether the services provided the Fund and Sub-Advised Funds are sufficiently similar to serve as a comparison, regardless of the cost and profitability of such services. *See* Opp'n at 6:24-7:12. While Defendant agrees that cost and profitability are relevant to the ultimate question of whether the Fund's fees are within bargaining range, Defendant contends that, as a dispositive, threshold issue, "[i]f the nature of the services provided by [Defendant] as an adviser and sub-adviser are sufficiently different, as [Defendant] maintains, then the fees paid by the Sub-Advised Funds cannot define the bargaining range for the Fund's fees and the comparison must be disregarded." *Id.* at 7:19-25.

In addition, Defendant points out that allowing discovery into costs and profitability would defeat the purpose of phased discovery, as it would spill over into every *Gartenberg* factor and, therefore, every potential issue in the case.[1] *Id.* at 10:20-26. Defendant asserts that Plaintiff has served it with 37 document requests demanding a breadth of information into detailed cost and profitability data that "would make it highly improbable that the parties could complete discovery in accordance with the Court's schedule and accomplish what was intended by the Court's order." *Id.* at 11:2-23; *see also* Decl. of Robert Mockler ("Mockler Decl.") Ex. B, Docket No. 68-3 (Plaintiff's Requests for Production).

The Court would agree with Defendant that Phase 1 Discovery should be targeted only at whether the services provided to the Fund and Sub-Advised Funds are sufficiently similar to serve as a benchmark comparison. In *Jones v. Harris Associates L.P.*, the Supreme Court explained that there should not "be any categorical rule regarding comparisons of the fees [an investment advisor] charges different types of clients . . . . Instead courts may give such comparisons the weight that they merit in light of the similarities and differences between the services that the clients in question require." 559 U.S. 335, 350-51 (2010). The Supreme Court thus cautioned lower courts to "be wary of inapt comparisons," emphasizing that "[i]f the services rendered are sufficiently different that a comparison is not probative, then the court must reject such a comparison." 559 U.S. 335, 350 (2010). Thus, as Defendant contends, to the extent the services provided to the Fund and Sub-Advised Funds are sufficiently different that the comparison is inapt, it will be dispositive of whether there is a "factual predicate for [Plaintiff's] proffered comparison."[2] *See* Opp'n at 7:9-25.

---

[1] The *Gartenberg* factors include "(1) the nature and quality of the services provided to the fund and shareholders; (2) the profitability of the fund to the adviser; (3) any fall-out financial benefits, those collateral benefits that accrue to the adviser because of its relationship with the mutual fund; (4) comparative fee structure (meaning a comparison of the fees with those paid by similar funds); and (5) the independence, expertise, care, and conscientiousness of the board in evaluating adviser compensation." *See Jones*, 559 U.S. 335, 344 n.5 (internal quotations and citations omitted).

[2] Plaintiff argues that costs and profitability information is relevant to determining whether the services provided are actually different. *See* Reply at 3:1-4. Plaintiff relies on the Seventh Circuit's decision on remand in *Jones*, in which the Seventh Circuit granted summary judgment for the defendant investment advisor because the plaintiffs had "not proffered evidence that would tend to show that Harris provided pension funds (and other non-public clients) with the same sort of services that it provided to the [mutual] funds, or that it incurred the same costs when serving different types of clients." *See Jones v. Harris Assocs. L.P.*, 611 Fed.Appx. 359, 361 (7th Cir. 2015). Contrary to Plaintiff's assertion, the Seventh Circuit did not state that costs were relevant to determining whether the services rendered were sufficiently similar. Indeed, to the extent the services provided to the Sub-Advised Funds are significantly different from those provided to the Fund, the Court agrees that it would be dispositive of whether the comparison is probative, regardless of how much the services costs. *See Jones*, 559 U.S. at 350 ("If the services

3

Separately, Defendant argues that the Court should not allow Plaintiff to seek discovery related to seven additional Sub-Advised Funds that were not identified in the Complaint (the "New Sub-Advised Funds"), which Plaintiff seeks information about in its Requests for Production.[3] *Id.* at 12:13-24. Defendant contends that the three Sub-Advised Funds identified in the Complaint are sufficient to serve as a representative sample that "demonstrate[s] the inaptness of the plaintiff's comparison." *Id.* Defendant provides no explanation why these three Sub-Advised Funds serve as a representative sample,[4] nor does Defendant cite to any authority in support of its position. Indeed, to the extent Defendant provides similar services to *any* of the New Sub-Advised Funds as it does to the Fund, that information is relevant to the threshold issue of whether a comparison to that Fund is probative. As such, the Court would not limit Plaintiff to the Sub-Advised Funds identified in the Complaint. *See Epstein v. MCA, Inc.*, 54 F.3d 1422, 1434 (9th Cir. 1995).

### III. Conclusion

For the foregoing reasons, the Court would limit Phase 1 discovery to information related to the services Defendant provides the Fund and the Sub-Advised Funds. The Court would not limit discovery to the three Sub-Advised Funds identified in the Complaint.

---

rendered are sufficiently different that a comparison is not probative, then the court must reject such a comparison."). On the other hand, if Phase 1 discovery establishes that the services are sufficiently similar to serve as a comparison, then costs and profits will become relevant to determining whether the additional fees charged to the Fund are justified.

[3] The Complaint identified the AZL MetWest Total Return Bond Fund, the Consulting Group Capital Markets Core Fixed Income Investments Fund, and the Columbia Active Portfolios Multi-Manager Core Plus Bond Fund, as the Sub-Advised Funds for which Defendant provides substantially similar services as it does for the Fund. *See* Compl. ¶¶ 42-43. In its Requests for Production, Plaintiff seeks information concerning "any other mutual fund to which [Defendant] provides (or has provided at any time since January 1, 2010) Investment Management Services concerning the types of securities or the investment strategies set forth [in the Complaint]." *See* Mockler Decl. Ex. B ¶ O. Defendant contends that there are seven New Sub-Advised Funds that fall within this definition. *See* Opp'n at 6:7-21.

[4] For example, Defendant has not asserted that all of the Sub-Advised Funds are the same or that the information derived in discovery for each Sub-Advised Fund would be the same/duplicative of the other Sub-Advised Funds.